The next matter called is case number 121943, Antonella Antonellicelli v. Ramos and others, agenda number 6. Appellant, are you ready? You may proceed.  My name is Francis P. Kuisner and I go by GAPT. I represent the appellants, Chicago Good Iron, Trillium Staffing, and Carl Browder. This is an appeal from a decision of the First District Appellate Court affirming the decision of the trial court which granted the motion for good faith finding and the dismissal of the counter defendant Daniel Rodriguez. We've raised two issues on appeal. The first issue is whether an intentional tort visa such as Mr. Rodriguez can avail himself of the protection of the Contribution Act. The second issue is whether the trial court failed to give due consideration to the Browder defendant's statutory protection under section 3-1117 of the Code of Civil Procedure. This case arises out of a three vehicle accident on I-88 west of Chicago. Mr. Rodriguez, who was under the influence of cocaine, crossed when opening a concrete median causing a T-bone collision with a vehicle operated by the boyfriend of the plaintiff. The plaintiff is Angela Antonellicelli. She was a passenger. A second impact occurred when Mike Kline's tractor trailer, which was following the Antonellicelli vehicle, collided with the Antonellicelli vehicle. The state police did an extensive investigation and determined there was significant damage to the front end of the Antonellicelli vehicle as a result of the first impact. There was minor property damage to the tractor trailer, cracked headlight, and scratched bumper. Mr. Rodriguez pled guilty to aggravated DUI and was sentenced to seven years in prison. The plaintiff sued both the Browder defendants, Mike Kline's, and Rodriguez under the fear of negligent operation of their vehicles. We filed a counterclaim against Rodriguez alleging that he was an intentional tort user. After most of the discovery was completed in the case, the plaintiff settled with Rodriguez for his policy of $20,000. And this settlement was over our objection. A good faith finding was entered and our counterclaim was dismissed. Our first issue was whether an intentional tort user, such as Rodriguez, can avail himself of the protection of the Contribution Act. The Contribution Act was created as a remedy for negligent tort users. This court in Gerald v. Hargrove builders examined the legislative history of the Contribution Act, concluding that intentional tort users cannot seek contribution. This was later confirmed by this court in Ziarko v. Sulines. Our argument today on this issue is a logical extension of Gerald v. Ziarko. That is, an intentional tort user cannot benefit from the Contribution Act in any respect. In other words, he cannot seek and reach a good faith finding and the dismissal of the counterclaim brought against him. The appellate court held that it was not required to address the issue of whether or not an intentional tort user can enter into a good faith settlement. The court held that it was only required to address the allegations of the plaintiff's complaint. The plaintiff's complaint pled negligence, not intentional tort. And the court also argued and held that a counterclaim is a separate cause of action. And it's immaterial and irrelevant to the analysis of the good faith finding. First of all, we believe the appellate court was wrong in that respect. There's no law that says that the court in addressing a motion for a good faith finding is confined to the allegations of the complaint. In fact, Johnson v. United Airlines' court held that the court must look to the totality of circumstances and in the appropriate case, look to evidence outside the pleadings. And we have cited evidence that was virtually uncontroverted with regard to the facts of this case that Mr. Rodriguez was under the influence of cocaine and intentionally caused this accident. How did he intentionally cause the accident? He testified... It was an accident. No, we took his deposition in prison and he said that he had a substantial... He understood when he got in that car, when he was under the influence of cocaine, he was placing himself and everyone else at risk. And I think the test is whether there's a substantial certainty that harm could be created. I don't know if that answers your question. Yes. I mean, obviously what you're discussing is who controls the issue here, correct? The plaintiff pled this as negligence. Correct. The co-defendant then pleads a different theory of an intentional tort officer, and that's going to change the entire dynamic. So, as you said, the appellate court said, well, no, the plaintiff brings the case and the plaintiff is framing the issues. And you're suggesting that that's not true, correct? I'm suggesting... Yes. including evidence outside the pleadings, and if the evidence outside the pleadings is virtually uncontradicted, that should be the controlling factor. Similarly, the appellate court stating that our counterclaim is a separate cause of action simply is not the law. I mean, counterclaims back against the plaintiff,  we're simply asking for a portion of damages from a co-defendant. But you're changing the theory of the case. The theory of the case was negligence. That is correct. And then the co-defendant is going to change the theory of the case to something else, correct? And how does the defendant do that, a co-defendant do that? Well, through our pleading and through the evidence that was presented. If there's no evidence to suggest that he was intentional toward FISA, I would agree. But their evidence was to the contrary, that he was under the influence. He attempted to make a U-turn through a concrete means. Have you cited any cases to us that someone who is under the influence is necessarily his conduct is intentional in the context of a car accident? Well, in the context of this accident where he admitted that by going out under this condition, he was subjecting himself and the public to harm, that was his testimony. That is his deposition. Mr. Kuisner, in following up on Justice Shice's line of questioning, where in the Contribution Act, though, does it say that only negligent toward FISA can settle? It doesn't say that. So why couldn't even an intentional toward FISA settle? Well, our argument is that the intentional toward FISA doesn't have standing to assert the Contribution Act as a claim or a defense. He can't seek contribution himself. And our argument is he can't seek the protection of the Contribution Act through a dismissal of the counterclaim because he simply doesn't have standing. If you were willful and wanton, reckless as opposed to intentional, that's something else. That was the issue that was dealt with in Ziarko. Ziarko made a distinction between willful and wanton conduct that is intentional versus willful and wanton conduct that is reckless. An intentional toward FISA does not have standing to make a contribution claim. And our argument is by the same token, you shouldn't be able to assert the Contribution Act even though the Contribution Act doesn't say that he can't. It doesn't say so in so many words. We're looking at the legislative history of the Act. The plaintiff has argued, or I shouldn't say the plaintiff, Mr. Rodriguez has argued a couple of things. Again, something was brought up in Ziarko, and that is there is a difference in conduct between intentional toward FISA and negligent toward FISA. There's a qualitative difference, and therefore, because of the qualitative difference, the negligent toward FISA cannot sue the intentional toward FISA. But Ziarko doesn't stand for that proposition. Ziarko simply stands for the proposition that an intentional toward FISA cannot seek contribution. There are no cases that I'm aware of that are published cases in Illinois that address the issue of whether a negligent toward FISA can sue an intentional toward FISA. But we did cite a federal district court case in Northern District, Illinois, the case of Long Beach Mortgage v. White, in which the court commented that it would be, in the court's language, bizarre to conclude that a negligent toward FISA cannot seek contribution from an intentional toward FISA, a party that's even more at fault. It doesn't make sense. You know, our position on this issue is simply the contribution is an equitable remedy that's not available to an intentional toward FISA. Equity does not reward intentional conduct, and therefore, Rodriguez cannot avail himself of an intentional contribution. Because he's less at fault? I mean, if we could fill in all that thought. Why does equity demand that he cannot have a good-faith settlement? Yes, he's going to jail. He doesn't have any money. He has minimal insurance. He gives up his insurance policy. Why isn't that good faith? Well, good faith, I mean, in the sense of fraud. There's no fraud. We're not alleging there was fraud or collusion, misrepresentation. That's not there. But in Johnson, this court indicated there is more that the court can't take into consideration. The claims and defenses of the parties and likelihood of success at trial. But we're saying that this factor, that he is an intentional toward FISA, deprives him of standing to assert the benefit of the Contribution Act. Standing? He's not suing for contribution. No, but he's seeking protection of the act. He's asking the court and received a dismissal of his counterclaim. So he received a benefit. And we're saying that counterclaim should remain in existence. If there are other questions on this issue, I'll move to the second issue. Our second issue is that the trial court abused its discretion by failing to give due consideration to the rights of the Browder defendants, my clients, under Section 2-1117. We asked the court to take into consideration Section 2-1117 when it arrived at a good faith finding. And our concern was simply this. As a result of the Reedy case, if the settlement is concluded and there is a good faith finding, the party is removed from the case and is no longer on the court. And that obviously creates a problem for our client, the sole party in front of the jury, where under the facts of this case, there's evidence that they were minimally culpable parties. The trial judge said that she took that part of the concern into consideration but felt that based upon her view of the totality of circumstances, she had discretion to grant a good faith finding. The appellate court said that Section 2-1117 is not a factor that the court has to take into consideration in entering a good faith finding. Can Unseger and Reedy be reconciled? You know, I think they can't. I don't think they can. I think the two statutes can be reconciled, but Reedy creates a problem that there's a conflict between the statutes such that The client, Unseger, in this case would agree with your argument with respect to Issue 2, is that right? I would think so. I mean, let's assume in Unseger the third-party defendant who was 99 percent at fault reached a settlement before trial. The direct defendant would have gone to trial and would not have had the opportunity to argue to the jury he's 99 percent at fault. It's not there. The direct defendant, who in that case was found 1 percent at fault, would be responsible for all damages. And that is the inequity and the conflict that Reedy creates. I'm not here, and I didn't ask in the brief, to reverse Reedy. What I have asked the court is to enter a decision, that requires that 211.17 be taken into consideration in a motion for good-faith finding. I suggested a procedural framework that you may or may not agree with, but my procedural framework would be such that when the motion for good-faith finding is made, the opposing non-settling defendant could raise the argument that he is a minimal culpable. So you're nuancing that. Reedy would say that 2-1117 applies only to defendants who remain at trial. Correct. So you're saying that's still okay in good law, but when you're determining a good-faith settlement by a defendant who presumably is getting out of the case, that you have to take into consideration their culpability before you enter the good-faith finding. In fact, if you're example of 99-1, you'd say you can't do it. And therefore, that defendant would remain at trial and 2-1117 would apply. Is that how you see Reedy still be in good law? If Reedy is still good law, that's the only option to reconcile the two statutes, to keep the settling party in the case until the conclusion of the case. He can renew his motion for good-faith finding at that point. He could be dismissed at that point, but at least he's in front of a jury and the non-settling party has the ability to argue that he is a minimally culpable party and should only be responsible for his percentage of non-medical damages. Now, obviously, the cleaner approach would be to reverse Reedy, to overrule Reedy. And in the Reedy decision, there was a discussion about whether or not it's unfair to a non-settling party to let a party out and thereby present this non-settling defendant with the prospect of being on the hook for 100% of the damages. That argument was made, and the response in the plurality opinion was, well, that's something that the legislature should take into consideration. What does the good-faith hearing look like? Under your analysis of determining culpability, what does the hearing look like? I think it would be basically looking at the evidence that we presented in the trial court and allowing the judge to come to a conclusion whether there is a reasonable likelihood that the non-settling party would be found less than 25% at fault if this case were to go to trial. We're not talking about an elaborate hearing. She could have done it just based upon the evidence that we presented and made that determination. I should say this. So the finding would be deferred until after the trial? Correct. The motion denied without prejudice. Renew it at the close. You know, there are some problems with that procedure, I'll admit. I mean, if you had multiple parties and you have one party, non-settling party, finds I'm less than 25% at fault, well, you run into the prospect of another minimally culpable party not being able to settle out of the case. I think that that would be a problem. And similarly, if you had a situation in which two defendants, one of whom has substantial assets and wants to settle out the case, I don't think this procedural framework that I've suggested would make a whole lot of sense under those circumstances either. Does the defendant then that wants to settle have to make a decision when they get that order that says denied without prejudice whether they want to participate in the trial or not? I think they do. I mean, that's an argument that has been made against this, and it would cost money to defend the case. There's no question. You know, that's a problem. There's no question. And you don't see any way of any procedure prior to trial and determination? I mean, I would imagine there are some cases where it's pretty easy, right? I mean, you can just look at the depositions and indicate, okay, I think that this party is 99%. But there are some that are close, right? So is there any way to do it prior to trial? Well, other than what I suggested, I can't think of anything. I mean, it's not a clean approach, but it's an equitable approach. At least it supports the concept that was created under Section 2-1117 of protecting minimally culpable parties. Absent some type of protection, that statute is not serving its purpose. Mr. Klusner, your time has expired. And I appreciate it, Your Honor, and I thank you. In conclusion, I'd ask the Court to reverse the appellate court and trial court and vacate the order of good faith finding and trial law. Thank you. Thank you. Mr. Chief Justice. Your Honors, may it please the Court. My name is Esther Joy Schwartz, and I represent the defendant appellee, Daniel Juan Rodriguez. Your Honor, this case – Ms. Schwartz? Yes. I know you have a lot to say, but I just want to pick up from where we left off. That's fine. So it's not lost. The dissent in Reedy talks about the, you know, it's point-counterpoint. I mean, that's problematic, as opposing counsel said, regarding having the hearing after trial and what that presents to the defendant that would like to get out of the case and would like to settle the case. The dissent points out the other side of the coin about going after the deep pocket that is only 1% at fault, which also is problematic. So how do you balance that? Well, you have to strike a balance between the two competing policies under the Contribution Act. One is to encourage settlements, and it's actually been said to be an early settlement, if you can. And one is to apportion fault between joint tort feasors. And so when you try to do the Reedy analysis, I think you're tipping the scale to the point where the apportionment becomes more important to the settlement, and you're going to discourage settlements. Similarly, prior to Johnson, when this court held that they reduced it from clear and convincing to preponderance, at that point when it was clear and convincing, the cases were actually tipping the scale of settlement to the detriment of the apportionment. So you only have to strike a balance. It's not a perfect apportionment. As far as 2-1117, and I'm sorry Justice Freeman isn't here only because I wanted to tell him why I wanted to support the decision, at least for purposes of this case. But I also appreciate Judge Garmon's dissent. What I think is really important, and we really haven't touched on it in the other argument, was when you look at 2-1117. You don't appreciate my decision in Unzinger? I love Unzinger. I'm going to get to it. Or Kilbride said. Unzinger, I think you can, there's a straight line between Skinner and Reedy. And my argument goes in a straight line. And the straight line is that you don't apportion fault with intentional tortfeasors. You don't have contribution with intentional tortfeasors. You don't have 2-1117 with intentional tortfeasors. So we don't have to twist this case in any way to get around Reedy or the contribution after Unzinger. Because if you look at the language of all the statutes, they've made it very clear. They're talking negligence. They're talking willful. But there's that spectrum in Ziarko that is discussed. And in that spectrum, we've got that high level of intentional that borders on intentional conduct. And we have the lower threshold of reckless behavior. You don't get 2-1117 when you have that high willful or intentional. And you don't get contribution when you have intentional acts. So when counsel keeps arguing, you can sue someone in contribution and then that party doesn't get the protections. Well, you are sued in intentional acts, which I dispute. But you can have, quote, joint tortfeasors under the contribution act. Because the argument is you can't be joint tortfeasors. If you look at Ziarko in Justice Nichols' dissent, she says that the injury has to be caused by two accidental acts, by accidental conduct. Once you remove it to intentional conduct, you don't have contribution and you don't have 2-1117. You don't have 2-1116. You don't have 2-604.1. The legislature was very clear on the schemes of the wording that was chosen each time. And even Justice Garmon in her dissent gave credence to the language in the contribution act of what was meant by two or more persons subject to liability and tort. And also she discussed in 2-1117 the language about bodily injury or death or physical damage to property based on negligence or product liability based on strict tort liability. This court has unanimously and uniformly held that that doesn't include intentional acts. Counsel has made this very easy for this court. I would like to digress factually just to explain the procedure of what happened in this case. Let me just stop you for a minute. So your position then is we don't have joint tortfeasors here at all. There was an intentional act, end of story. I believe we had joint tortfeasors if we're looking at how plaintiff portrayed the case. Plaintiff claimed it was negligence. Plaintiff said even though we were under cocaine, we failed to keep a proper lookout. We entered the wrong lane of traffic. We failed to keep our vehicle under proper control. Plaintiff pled seven acts against us and framed it all as negligence. What happened in the counterclaim, counsel filed a counterclaim and ironically he claimed seven acts of negligence. Six of them are identical to the plaintiff's complaint. He only adds the additional one about the cocaine and he goes so far as to claim it's all intentional. He doesn't even try to put it in the spectrum of Wilf and Watt. So if you're going to portray it only under the plaintiff's case, we should get out. And if you portray it under even this counterclaim, how do you want to look at it? There is no contribution and there is no joint and several liability. Counsel is not being prejudiced in any way because our fault will not be on the verdict form if our fault is intentional. And if our fault is negligent, then we will be on the verdict form, but we have to use Reedy, which was nine years ago. And the legislature has chosen not to change it. And the legislature has said if you settle in good faith, you're not on the verdict form. So we go back to what a settlement in good faith is. That's the only requirement under the Contribution Act. And that goes to strike the balance. One of the interesting cases, Pecora, and also if you take a look at Miranda, in those cases the plaintiff portrayed the defendant negligent in Miranda and he was intoxicated. And he was more at fault and he paid $20,000 limits, a substandard, surprisingly tendered their limits and didn't deny coverage. And they basically said this was a bad settlement under poor circumstances. And yes, perhaps the general contractor will have to hold the burden of the case, but this party had no collusion, no fraud, no wrongdoing, and they should get out. So I don't understand how counsel can argue he can sue us for contribution on one hand, but then we don't get the protection of subsection D. If this court wants to hold an intentional court seizure, either to file a counterclaim or to be the recipient of a counterclaim, we then can avail ourselves of the protections of subsection D, which is to settle in good faith. And when you look at the Unsinger decision, Your Honor, you even stated when you were trying to reconcile contribution in 2-1117 that they could be reconciled and they were not inconsistent and there was no unconstitutional effect. And you focused on section 2-1117 on the opening wording, and it was argued that it only meant negligent tort fees, products tort fees, or strict liability. And Your Honor stated that you believe that that had to do possibly with the insurance industry with respect to paying for covered claims. If we had been sued an intentional tort, we would be back to the situation possibly of Peperora, which would be we'd have no insurance policy, we'd have no defense attorney, we wouldn't have paid $20,000, and this defendant, who's unrepresented, could have paid $1,000 as what happened in that case. And under a totality of circumstances, the court ruled that that was in good faith. Why? Because there was no collusion, there was no wrongful conduct, and if you look at the litany of cases that we cited in our brief, whenever you thwart the settle, whenever you try to apportion the money in a collusive way, those are the suspicious settlements. This is a straight-on bodily injury case. Now let me also state that 2-1117 is not, as counsel says, supposed to protect minimally culpable defendants. It's only with respect to the non-medical. So even if this party is held to be less than 25%, he holds the entire medical case. So you have to look at it that way. I didn't make that decision. There was an opportunity in 1995 to go pure settle, and Beth threw it out. So we have to live with 2-1117. We have to look at the threshold, which was 25% or less than 25%, excuse me. And in this case, where counsel put in the record we have a serious injury of multiple surgeries, and we have $200,000 to $300,000 in medicals, counsel, even if minimally culpable, is going to have to pay all those medicals. So you can't fashion a remedy just for this one case that won't have far-reaching consequences. What about a case when there's very little medicals and there's more non-medicals, or a case when there's very much non-medicals but there's also significant medicals? So I don't think we have to go there. I just want to also explain to the court that we moved very early in the case for good-faith finding. We settled for policy limits very early in the case. And because the judge wanted to do the totality of the circumstances, because she appreciated the Johnson decision, which is a fabulous decision by this court, and the plurality, that is our guide and our map to how you do a good-faith finding process. She did not just look at the complaint. She allowed the defendant to take discovery. She allowed the broader defendants to depose our defendant in jail. She then had both sides brief it, and they attached four documents to their petition response. First, they attached the police report. The entire investigation report, which counsel says was very thorough. They attached the guilty plea and the proceedings in the criminal case. They attached the sentencing procedure. They attached the defendant's deposition. The judge read it all. She read it all in the context of the negligence case. She may not have read it in the context of the counterclaim because she agreed with us that it didn't make any difference what counsel labeled it. The intentional tort didn't change how we were going to trial. I would also state that the counterclaim had not yet been filed when we first moved for the petition for good-faith finding. So we sought an order to bar contribution. We thought what was coming was contribution in a negligence setting. It was counsel who then stated, I have a pleading that if I put on file is going to change the complexion of this case and I'm going to be able to keep these defendants in because they're more culpable. And what I would suggest to the court and to also counsel is this case comes down to choices. Settlements are not always advantageous to the party that doesn't settle. The case law says that settlements are advantageous to the parties that do settle, and there's nothing fraudulent or collusive. Counsel even concedes that he never makes that argument because there simply was nothing in this case other than good faith. So what are the choices that are left for counsel? One, first of all, he gets the credit. I think we have to understand that a settlement is in good faith as long as it's not inconsistent with the act, and that's the thwarting of the credit. I would suspect if we had a half a million dollar policy, we might not be here today. But because we had a $20,000 policy, it's not enough of a credit to counsel. The other choice counsel can make is to argue sole proxy in the cause of trial. Reedy II at least says that you can now put in evidence of the bad acts of the other party. You can point to the empty chair. The plaintiff's attorney has chosen not to participate in the appeal, so he's willing to go to trial with the empty chair. So that's the gamble the plaintiff and the co-defendant are making. The non-settling co-defendant has a pending motion for summary judgment that's been stayed now for several years, claiming that they want to get out as a matter of law. And, of course, there's the choice to settle because cases will settle oftentimes under bad situations. If counsel believes they're going to win outright on sole proxy in the cause, maybe they won't settle. But if they have an argument to be had, perhaps they'll settle with the plaintiff. I would also suggest that if you look at Cellini and if you look at Miranda, the court has been very clear in the First District that the Reedy factors did not at all interfere with the good factors in the Johnson decision. And in Cellini, which surprisingly was done by counsel's predecessor law firm, they appealed three settlements that they claimed were not in good faith. When it got time for the argument, there was only one left. Why? Because they settled the other two. Counsel, I need your help. Sure. I'm not a PI lawyer. Okay. I've never been the one making the call. I have not sat around and talked to the insurance company. Sure. Okay. So I don't know what you're talking about. I mean, I do, obviously. I do. But that's not how I think. I'm a judge. Okay. Give me some direction. Is there something in the statute? Is there something in precedent? That's how we decide these cases, not is it better for the plaintiff? Is it better for the settling defense? Is it better for the non-settling? I want to know what is the law? Is this a public policy choice we're making, or is it something that's grounded in statute or precedent? It's grounded in statute to the extent that intentional torts are not in contribution. It's grounded under 21117 to the extent we don't have to consider it because there will never be apportionment. But most importantly, it's grounded in the Johnson decision on which the court said, if you come forward with a legally valid agreement, which is what we did, the burden of proof shifts to the party that's resisting it. That party then has to come forward and show that it's not a good thing. The Johnson decision says you don't need an evidentiary hearing, yet the trial judge is the best arbiter of what to do on a case like this, should review the entire record. Our judge read everything. What she didn't allow was an evidentiary hearing. I cannot believe that this court would condone evidentiary trials on these kinds of cases. One, you have a jury demand, so is it really fair to have a judge decide who's at fault? Two, you have other defendants who may not be objecting to the good faith finding and don't want to go through an evidentiary hearing. Three, you're requiring the parties to essentially finish discovery on all these issues and argue it's not a simple trial. It's like you're supposed to look at what? You've got hearsay arguments, what's admissible, what's not. All I'm suggesting is based on this record, our defendant who was indigent is serving seven years. Our defendant who was sued in negligence had the policy limits paid in his behalf promptly. Our defendant has no possibility of paying a judgment in excess of $20,000, and counsel has so much said that after trial, don't worry about it, you can settle. But there could be a judgment on the counterclaim for contribution, and it would be in excess potentially of $20,000. Am I now collusively supposed to cut a deal with a co-defendant that I will agree to stay out the verdict for so that he can then argue less than 25% but after trial will then settle? I mean, the whole idea, again, is you need to encourage settlements. It's a very clean process. I was waiting for a breath, but I gave up. Okay. So is there, could the trial judge, as the arbiter of the good faith settlement, could that trial judge consider the culpability of the parties and what might occur at trial? I don't know if they do it in percentages, but they certainly do look at the culpability of parties. They look at the defense's race. If it's a village that's pled or municipal, Wolf and Juan, they looked at the possibility of recovery. They do look at culpability. They look at defenses. They look at the opportunity. Can they specifically at that point in time look at the possibility that you have the 1% defendant versus the 99%? I don't think so. And it wouldn't be fair, or would that not enter into an analysis of whether the settlement was in good faith? I think it could be a factor, but the totality of the circumstances, it's not the only factor because that in turn. You'd also look at policy was offered. Policy limits, the indigency of the defendant, the representation. Did the plaintiff sue the defendant? Reconcile in the last minute all those cases that you love so much, specifically Unzinger and Reedy. Okay. Well, Unzinger says that it was the employer that was on the verdict form that couldn't be. It settled out. It had nothing to do with a third party. So Unzinger does not say what counsel says. It's like if another third party settled out and somehow his fault wouldn't be considered. Of course, it was the employer and only the employer whose fault is still on the verdict form. So in that respect, Unzinger and Reedy are the same. The statute came down, as this court well knows, after Unzinger that legislature ran and decided to put the employer now as the exception. So we have heard nothing in nine years. If a party settles in good faith, they are not on the verdict form. Do we need to reach that issue in this case when there is no joint set of liability between an intentional actor and an action actor, when there will never be apportionment under 21117? And once we go back to just the plaintiff's complaint, negligence, this is a case that's crying out for good faith finding. It's an abuse of discretion standard, which is a very deferential standard by this court. This court would have to say there was no basis in logic, it was capricious, there was no rhyme or reason, and I don't believe that this court could make that finding either about the trial judge or about the appellate court, and we would respectfully ask this court to affirm the finding of good faith and the dismissal of the counterclaim. Thank you for your time. Thank you. Rebuttal. Neither our accounts brief nor the appellate's brief cited a case that does relate to the issues that we're discussing here tonight. I filed a motion to cite additional authority, and the additional authority doesn't help, by the way. The additional authority is Hills versus Bridgeview Little League, and involved a skirmish at a Little League game in which one coach and a couple coaches beat up another coach. And so the victim, if you will, files a lawsuit against the Little League Association and two coaches who were the attackers. The claim against the attacker was intentional conduct. And so the Little League Association wanted a 2-1117 analysis at trial, and the trial court said, no, we're not going to do that because a 2-1117 does not include intentional conduct. That's the only case I'm aware of now on that point. And the case went up to the Supreme Court, but it was reversed on other grounds, and the court never addressed it. So that's a problem that kind of hurts me. If I'm taking a position that it's an intentional court case and I don't get a 2-1117 analysis, unless you conclude that that Hills case is bad law. And I think it's bad law, but that's going to be your decision. But interestingly, Emily's arguing that Rodriguez is negligent, and that she's arguing he's intentional. I don't know what she's arguing. But certainly if he's negligent, then the 2-1117 analysis should come into play. And then we get back to Hunziker, where Justice Thomas, you reconcile the two statutes, contribution and 2-1117, by saying they don't conflict. You do the 2-1117 analysis first to determine liability, and then you determine contribution after that. So if 2-1117 should be addressed first, why shouldn't it be addressed by the trial court in the motion for good faith finding? Why shouldn't it be at least one factor that should be taken into consideration? In this case, the evidence was very clear that... There are problems with what the procedure looks like. This denied without prejudice for the, presumably, the defendant that wants to settle, to have to make a decision to either spend money in trying the case or wait to see how it comes in, so then there can be an accurate assessment, that's a tough deal.  And I appreciate your candor on it, and I don't see how you can do it beforehand. Maybe you can in some cases, like we talked about, that are slam dunks as to who's more culpable than the other, but that process after trial seems to be very problematic. It is problematic. There could be a covenant not to execute. The plaintiff could sign off on that and say, I'm never going to execute on a judgment, and I'm going to dismiss you, but the part is still subject to the common claim, and it's still on the verdict form, and I suppose the insurance company is probably on the hook because they've got a duty to defend no matter what. So if the case is still going on, they've got a duty to defend. So certainly attorney's fees would be expended by that settling part. It's a problem. The cleaner approach would be reverse breeding because it creates a conflict between two statutes, and it gets back to the clear, unequivocal, unambiguous language that parties that are less than 25% should not pay entire damages awards. That's really what it was. Thank you. Thank you. Case number 121943, Anthony F. Shelley, Rodriguez, Browder, will be taken under advisement as attendant number six. Mr. Krisner, Ms. Schwartz, thank you for your arguments this morning. You are excused for the rest of the day.